IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CABIN S. LONG | § | PLAINTIFF |
| | § | |
| | § | |
| v. | § | Civil No. 1:13CV343-HSO-RHW |
| | § | |
| | § | |
| DEBORAH LEE JAMES, Secretary | § | |
| of the Department of the Air Force, and | § | |
| UNITED STATES OF AMERICA | § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' [45] MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is the Motion for Summary Judgment [55] filed by

Defendants Deborah Lee James, Secretary of the Department of the Air Force, and

the United States of America on July 6, 2015.  Plaintiff Cabin S. Long has not

responded to this Motion, and the time to do so has passed.  Having considered

Defendants' Motion [55] on its merits, for the reasons that follow, the Court finds

that the Motion for Summary Judgment [55] should be granted, and that Plaintiff's

claims should be dismissed with prejudice.

I.  BACKGROUND

A.    Factual Background

Plaintiff Cabin S. Long ("Plaintiff" or "Mr. Long") is a veteran of the United

States Air Force who retired in 2010.  Dep. of Cabin Long [55-1] at 9.  After he

retired, Plaintiff began a period of employment as a civil service employee with the

United States Department of Commerce's National Oceanic and Atmospheric

Administration ("NOAA") effective January 3, 2011.  *Id.* at 30, 36-37; Notification of

Pers. Action [55-1] at 23.  According to a Notification of Personnel Action, Plaintiff

resigned from NOAA effective April 8, 2011.  Notification of Pers. Action [55-1] at

23.  Plaintiff therefore worked as a civil service employee with the Department of

Commerce for a total of 95 days.

Plaintiff began employment as a civil service contract specialist with the

United States Department of the Navy effective June 20, 2011.  Dep. of Cabin Long

[55-1] at 25; Notification of Pers. Action [55-1] at 21.  Plaintiff was then hired to

work at Keesler Air Force Base in Biloxi, Mississippi, in a similar position, effective

April 22, 2012.  Dep. of Cabin Long [55-1] at 9; Notification of Pers. Action [55-1] at

17.  Both positions were with the Department of Defense.  Plaintiff was credited for

his tenure in the Navy contract specialist position and was given a service

computation date of June 20, 2011, when he began working for the Air Force.

Notification of Pers. Action [55-1] at 17.  Plaintiff's "[a]ppointment [was] subject to

completion of one year initial probationary period beginning 20-JUN-2011."  *Id.*

Reggie Temple ("Mr. Temple") was Plaintiff's immediate supervisor at

Keesler Air Force Base.  George Budz ("Mr. Budz") was Mr. Temple's immediate

supervisor and Plaintiff's second-level supervisor.  Aff. of George Budz [26-7] at 1.

Mr. Temple had provided verbal feedback to Plaintiff on multiple occasions

indicating that Plaintiff's work was unacceptable.  *Id.* at 1; Decl. of George Budz

[55-3] at 3.  According to Mr. Temple,

numerous discussions were held regarding Mr. Long's lack of attention

to detail throughout the time he was assigned.  In a very short period of time it became apparent that his ability to accomplish the work was not improving and his overall knowledge was not what was expected of a GS-12 Contracting Officer.  I did not initially begin documenting Mr. Long's attention to detail because I realized he was in a new environment therefore, [sic] I addressed errors to him verbally.  Mr. Long repeatedly admitted his attention to detail was lacking and stated that it would improve.  Mr. Long accomplished one solicitation while assigned.  It normally takes an administrator approximately 3-5 days to prepare a solicitation for review and all solicitations are to be issued within 15 days of advertising.  A copy of a previous solicitation was provided to Mr. Long which was identical to the one he was to prepare except it was for a different construction contract.  During the period of 7-22 May 12, Mr. Long provided approximately 8-10 reiterations of the draft solicitation each [sic] time I would markup the solicitation and return it to Mr. Long for correction.  Each time the solicitation contained many of the same errors which were not corrected and/or other errors which were not on the previous version.  For comparison, I gave a newly assigned Senior Airman a solicitation to prepare, he [sic] accomplished it in 2 days and I [sic] only had to return it one time for minor correction.

Decl. of Reggie Temple [55-2] at 3-4.

On June 4, 2012, Plaintiff drafted a Memorandum to Mr. Budz complaining of issues that Plaintiff had experienced with Mr. Temple, whom he called unprofessional.  Mem. [26-4] at 1-2.  Plaintiff complained to Mr. Budz that Mr. Temple had asked Plaintiff into his office and then told Plaintiff that his "attention to detail sucked" and that "there were plenty of people in the building of a lesser pay grade that could do [Plaintiff's] job better . . . ."  *Id.* at 1.  In the last paragraph of the Memorandum, Plaintiff stated as follows:

I hereby invoke my entitlement to Family and Medical Leave for Serious health condition of self.  I request 12 weeks of administrative leave effective 5 July 2012 as prescribed in AFI-815 Chapter 10.4.  Forthcoming medical documentation will support this entitlement.

*Id.* at 2.

Plaintiff apparently continued coming to work after he drafted this
Memorandum.  On June 14, 2012, at 11:35 a.m., Plaintiff sent an e-mail to Carlet
Jones and Mr. Temple, with the subject line "SICK."  E-Mail [55-2] at 6.  Plaintiff
simply stated, "I'm going home.  I'm sick.  Something abdominal.  I'll see a surgeon
Monday.  I plan to be here tomorrow."  *Id.*

At 8:18 a.m. on Friday, June 15, 2012, Plaintiff sent an e-mail to Mr. Temple
and Mr. Budz.  E-Mail [55-2] at 7-8.  Plaintiff stated that he had come to work to
perform a specific task, but that after he completed the task he was "going back
home to rest."  *Id.* at 7.  Plaintiff detailed pain and other issues that he was
experiencing and stated that his primary physician and internal medicine physician
believed the problem to be his gallbladder.  *Id.* at 7.  However, Plaintiff stated that
the "[t]ruth is, they don't know what's wrong and it's a crap shoot."  *Id.*  Plaintiff
also disclosed "THE PLAN" he had as follows:

> I will see my primary care physician again today to pickup my Family
> and Medical Leave Act entitlement forms that will authorize me to be
> LWOP[1] for 12 weeks.  Here's how I'm going to handle this if it works for
> you.
>
> I will see another credible surgeon which my internal medicine doctor has
> a good relationship with on Monday afternoon.  Best case scenario, he
> takes out my [gallbladder] next week and the week after I get my life
> back, and you'll see a completely different person if that is the true
> illness.  If he opts not to, I'm going to have some serious talk with my
> internal medical physician on how soon if at all this is going to be
> resolved.  If I hear nothing versus positive results, I will resign from my
> position here.  It's not ethically fair to this organization to run with a flat
> tire in my section if there is little hope of recovery from this.  If 12 weeks

---

[1]It appears that Plaintiff was referring to leave without pay.

off is not helping my condition and hurting the common good of the organization, then it's the wrong logical/ethical choice.

On the other hand, if she feels like there is a therapy, treatment, or findings that may turn this around in the coming weeks; [sic] I will continue to report to work. At anytime if you feel like I'm not delivering well enough to earn my pay, inform me of that, and I will bow out of the FMLA entitlement until the treatment my doctor has in mind has failed or made me well. Taking these elephant pain killers is NOT treatment.

Like I said before, if she's just not sure and this turns into a wait and see/infinity action, I'll terminate my employment sooner than later. What I'm trying to say, if there is no hope in getting better, there is no reason to go on leave 12 weeks. I'll leave now and let you fill my role. That's not what I want, but its [sic] unfortunately the cards and right thing to do. I caveat this by saying I need to research HR on life insurance maintenance as this will likely end me, and no one would insure me at this point. I do have a wife and kids in this rotten game to consider. Reggie, I'll be here Monday morning regardless of condition.

*Id.* at 7-8.

According to Plaintiff, on Friday, July 15, 2012, he received supporting documentation from his attending physician in order to justify his Family and Medical Leave Act leave request, and he returned to work with this documentation on Monday, July 18, 2012. Dep. of Cabin Long [55-1] at 116. When Plaintiff returned to work on that date, however, he received a termination memorandum from Mr. Temple, terminating Plaintiff's employment effective July 18, 2012. *Id.*; Mem. [26-2] at 1-3. Mr. Temple was the final decision-maker and made the decision to terminate Plaintiff's employment. Decl. of Reggie Temple [55-2] at 3; Decl. of George Budz [55-3] at 3. The termination memorandum, which was drafted by Mr. Temple, stated that the "reason for this action is because of your poor performance and traits exhibited since your employment such as the quality of your work,

repeated disregard for chain of command, misrepresenting the facts, and unprofessional attitude towards 1st and 2nd line supervisors." Mem. [26-2] at 1.  The memorandum then detailed Plaintiff's various performance-related issues.  *Id.* at 1-2.  At the same time Mr. Temple presented Plaintiff with the termination letter, Plaintiff produced medical documentation to Mr. Temple.  Dep. of Cabin Long [55-1] at 116.

On June 19, 2012, Plaintiff sent an e-mail to Curtis Greer ("Mr. Greer"), an Air Force Employment Management Relations/Labor Relations Officer, stating that "[e]ffective today 19 June 2012 I wish to resign my position in 81st contracting on good terms in lieu of requesting Family [and] Medical Leave Act for self serious illness." Pl.'s E-Mail [55-1] at 26.  Mr. Greer responded with an e-mail the same day representing that "[t]he Commander 81CONS (Major David Wilson) has decided to rescind the 'notice of removal during the probationary period dated 18 Jun 2012' and accepts your attached resignation effective today 19 Jun 2012 as written." Greer E-Mail [55-1] at 25.  Mr. Greer approved Plaintiff's request for resignation in a Request for Personnel Action dated June 19, 2012.  Request [55-1] at 29-30.  According to Defendants, Plaintiff was therefore employed as a civil service employee with the Department of Defense for 365 days.

On December 17, 2012, Plaintiff filed a complaint of discrimination on the basis of disability, namely Chronic Pancreatic Disease, with the Air Force's Equal Opportunity Office.  Mem. [26-8] at 1.  Plaintiff alleged that he was discriminated against because of his disability because he sought to take leave on June 4, 2012,

under the Family and Medical Leave Act, but received a Notice of Removal on June 18, 2012, and was forced to resign or constructively discharged on June 19, 2012, in lieu of termination.  *Id.*

Defendants have supplied a Declaration Under Penalty of Perjury executed by Mr. Temple in which he denies that Plaintiff's impairment was a factor in the termination decision.  Decl. of Reggie Temple [55-2] at 4-5.  Mr. Temple also declares that Plaintiff "simply did not have the knowledge required for this position."  *Id.* at 5.  In Mr. Budz's June 11, 2013, Declaration Under Penalty of Perjury, Mr. Budz likewise avers that Plaintiff's medical concerns had no bearing on the termination decision.  Decl. of George Budz [55-3] at 4.  According to Mr. Budz, "Mr. Long only mentioned the medical condition after it was apparent to him Mr. Temple was considering whether his employment should be continued."  *Id.*

B.   Procedural History

Plaintiff filed a Complaint [1] in this Court on August 29, 2013, followed by an Amended Complaint [26] on March 12, 2014.  The Amended Complaint advances claims against Deborah Lee James, Secretary of the Department of the Air Force, and the United States of America, under the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* ("Rehabilitation Act" or "RA"), and the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601, *et seq.* ("FMLA").  Am. Compl. [26] at 1-12.  Plaintiff alleges that Defendants violated the Rehabilitation Act and the FMLA by denying

him FMLA leave and by forcing him to resign his position. *Id.*[2]

On July 6, 2015, Defendants filed a Motion for Summary Judgment seeking dismissal of Plaintiff's claims. Plaintiff, who is represented by counsel, has never responded to the Motion.

## II. DISCUSSION

A.     Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the

---

[2]The Amended Complaint also references Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). Am. Compl. [26] at 9. To the extent Plaintiff is attempting to assert a Title VII claim based upon his purported disability, this claim fails as a matter of law "because Title VII does not proscribe discrimination on the basis of disability." *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing 42 U.S.C. § 2000e-2; *Blow v. City of San Antonio*, 236 F.3d 293, 296-97 (5th Cir. 2001)).

evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

B.    Plaintiff's Rehabilitation Act Claim

Plaintiff asserts a claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  Am. Compl. [26] at 1.  "[T]he Rehabilitation Act . . . constitutes the exclusive remedy for a federal employee alleging disability-based discrimination." *O'Hara v. Donahoe*, 595 F. App'x 367, 369 n.1 (5th Cir. 2014) (quoting *Dark v. Potter*, 293 F. App'x 254, 258 (5th Cir. 2008)).  Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), and the Rehabilitation Act "generally are interpreted *in pari materia*." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011).  The United States Court of Appeals for the Fifth Circuit has also held that "[j]urisprudence interpreting either [Section 504 of the Rehabilitation Act or Title II of the ADA] is applicable to both." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000).  "The only material difference between § 504 and Title II of the ADA lies in their respective causation requirements." *Estate of Lance v. Lewisville Indep. School Dist.*, 743 F.3d 982, 990 n.3 (5th Cir. 2014) (quotation omitted).  Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity . . . ." *Id.* (quoting 29 U.S.C. § 794(a)). "Under Title II of the ADA, however, discrimination need not be the sole reason for the exclusion of or denial of benefits to the plaintiff." *Id.* (citation omitted).

Where a plaintiff has adduced no direct evidence of disability discrimination, the Fifth Circuit has applied the *McDonnell Douglas* burden-shifting framework. *Cavada v. McHugh*, 589 F. App'x 717, 719 (5th Cir. 2014); *Cohen v. Univ. of Tex. Health Science Center*, 557 F. App'x 273, 277 (5th Cir. 2014); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must prove (1) he is an individual with a disability; (2) who is otherwise qualified for the position sought; (3) who worked for a program or activity receiving Federal financial assistance; and (4) that he was discriminated against solely by reason of her or his disability.

*Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (quotation omitted).

Assuming without deciding that Plaintiff has satisfied the first three elements of his prima facie case of discrimination, Plaintiff's Rehabilitation Act claim nevertheless fails. Defendants argue that "[t]he timing of the decision to terminate Plaintiff was based on Plaintiff's probationary status, not his expressed intent to request FMLA leave." Defs.' Mem. in Supp. of Mot. for Summ. J. [56] at 9. The record evidence in this case reflects that

> [t]here was such a short period of time from when Mr. Long became a career-conditional employee on [April 22, 2012,] until [Mr. Temple] realized around the middle of May that [Mr. Long] was incapable of accomplishing the work of neither a contractor administrator and certainly not the responsibilities of a Contracting Officers [that it] left [Mr. Temple] little time to document and provide written feedback on

[Mr. Long's] performance prior to the end of his probationary period . . . .

Decl. of Reggie Temple [55-2] at 4.

The competent summary judgment evidence demonstrates Plaintiff was terminated because of poor work performance and insufficient "overall knowledge" needed for his contracting position.  Decl. of Reggie Temple [55-2] at 3-4.  Mr. Temple declared under penalty of perjury that Plaintiff's impairment was not a factor in terminating him.  *Id.* at 4-5.  Mr. Budz likewise affirmed that the reason Plaintiff was terminated was because his "work performance was consistently poor and slow" and that "medical concerns had no bearing on the decision."  Decl. of George Budz [55-3] at 2, 4.  Plaintiff has not presented any competent summary judgment evidence to create a question of fact as to the fourth element, that he was discriminated against solely by reason of his disability.  Plaintiff therefore cannot establish a prima facie case of discrimination under the Rehabilitation Act, and Defendants are entitled to summary judgment on this claim.

C.    Plaintiff's FMLA Claim

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  *F.D.I.C. v. Meyer*, 510 U.S. 471, 474 (1994) (citation omitted).  "[A] waiver of the traditional sovereign immunity cannot be implied but must be unequivocally expressed."  *Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 734 (1982) (quotations omitted).  Plaintiff has "the burden of proving that Congress has consented to suit by affirmatively waiving sovereign immunity in the specific context at issue."  *Gulf Restoration Network v. McCarthy*, 783 F.3d 227, 232

(5th Cir. 2015).

"Employees are covered under either Title I or Title II of the FMLA." *Valencia v. Dep't of Interior, Washington, D.C.*, No. 3:08-CV-69-WKW, 2008 WL 4495694, at *12 (M.D. Ala. Oct. 7, 2008) (citing 29 U.S.C. §§ 2601, *et seq.* (Title I) and 5 U.S.C. §§ 6381, *et seq.* (Title II)).  "Title I applies to private employees and federal employees with less than twelve months of service.  Title II applies [to] federal employees with more than twelve months of service—i.e. the majority of federal employees." *Id.* (citing 29 U.S.C. § 2611; 5 U.S.C. §§ 2105(a)(1)(A), (a)(1)(D), & 6301(2)).  "Federal employees governed by Title II . . . are specifically excluded from coverage under Title I." *Mann v. Haigh*, 120 F.3d 34, 36 (4th Cir. 1997).  "Title I expressly created a private right of action for covered employees," *Valencia*, 2008 WL 4495694, at *12 (citing 29 U.S.C. § 2617(a)(2)), while Title II did not, *id.* (citing 5 U.S.C. §§ 6381-6387); *see also Cavicchi v. Sec'y of the Treasury*, No. 04-10451, 2004 WL 4917357, at *6 (11th Cir. Oct. 15, 2004); *Mann*, 120 F.3d at 36.  As the Fifth Circuit has held, "[f]ederal employees with more than twelve months of service do not have a private right of action for FMLA violations." *Carlson v. White*, 133 F. App'x 144, 144-45 (5th Cir. 2005) (citing 5 U.S.C. §§ 6381-6387).

Defendants argue that Plaintiff is covered by Title II of the FMLA, which does not create an express private right of action.  Defs.' Mem. in Supp. of Mot. for Summ. J. [56] at 10.  The Court agrees.  The competent summary judgment evidence shows that Plaintiff was a federal employee with more than twelve months of service who would therefore be covered by Title II of the FMLA.  Plaintiff has

offered no evidence or legal argument to rebut this conclusion.  Plaintiff thus has no private right of action for any alleged FMLA violations.  *Carlson*, 133 F. App'x at 144-45.  Nor has Plaintiff demonstrated that Congress has affirmatively waived sovereign immunity for his claim under Title II.  *See Gulf Restoration Network*, 783 F.3d at 232.  Defendants are entitled to judgment as a matter of law on Plaintiff's FMLA claim.

### III.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion for Summary Judgment [55] filed on July 6, 2015, by Defendants Deborah Lee James, Secretary of the Department of the Air Force, and the United States of America is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Cabin S. Long's claims are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 23rd day of September, 2015.

s/ *Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE